UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

DICKSON MARTINEZ, KYLE BARNETTE,
and STEVEN LENKER,

       Plaintiff,

v.

ELDRED AUTO MANAGEMENT, L.L.C., a
Florida limited liability company, BLAKE
MEACHAM, an individual, and
DAVID LEONARD, an individual,

       Defendants.

_____/

## COMPLAINT

Plaintiffs, Dickson Martinez, Kyle Barnette, and Steve Lenker ("Plaintiffs"), through their

undersigned attorneys, file this Complaint against the Defendants, Eldred Auto Management,

L.L.C., Blake Meacham, and David Leonard (hereinafter, "Defendant"), and alleges:

### JURISDICTION AND VENUE

1.      This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair

Labor Standards Act" or "FLSA").

2.      Jurisdiction is conferred upon this Court by:

      (a)     28 U.S.C. § 1331;

      (b)     28 U.S.C. § 1343; and

      (c)     29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court

of competent jurisdiction.

3.      Venue is proper for the Southern District of Florida because:

(a)     Plaintiffs were employed in the Southern District of Florida by the corporate Defendant which at all material times conducted, and continues to conduct, business in Broward County; and

(b)     Additionally, venue lies because the acts that gave rise to Plaintiffs' claims occurred in the Southern District of Florida and because the corporate Defendant keeps an office for the transaction of its customary business in this district (Eldred Auto Management, L.L.C. was headquartered in Broward County, and both individual Defendants reside in Broward County in the same house).

## CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4.     Plaintiffs have complied with all conditions precedent in this case, or they have been waived.  Plaintiffs provided a presuit demand letter to the Defendants, but were unable to settle the matter.

## PARTIES

5.     Plaintiffs reside within this judicial district.

6.     Defendant Eldred Auto Management, L.L.C. is a Florida limited liability company which, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States.  Eldred Auto Management, L.L.C. at all material times owned and operated an auto repair and modification business in Fort Lauderdale, Florida at which for all material times Plaintiffs worked for and his labor benefited.

7.     The corporate Defendant paid employees and paid Plaintiffs (through the individual Defendants) and had gross annual sales volume that greatly exceeded $500,000 annually, at least for years 2017-19.  The corporate Defendant has two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida.  For example, during all

material times Defendant had at least 8 employees two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce), ordered parts from, cars from all over the country, and used cars and vehicles and worked on cars and vehicles that in turn use gasoline, which vehicles and gasoline were manufactured outside the State of Florida.  Further, the Defendant has various employees make long distance phone calls (suppliers, internet purchases, car owners, and others) and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate.

8.      Additionally, Plaintiffs are entitled to individual coverage, as they regularly and recurrently made calls to vendors, suppliers, prospective customers, and customers across state lines and thus they participated in the actual movements of goods or services and commerce across state lines.

9.      Individual Defendant Meacham was the co-owner and co-general manager of the corporate Defendant with individual Defendant Leonard and operated it day-to-day with and had operational control over the corporate Defendant deciding all financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, as the individual Defendant had the power the hire and fire, daily managed the company and was ultimately responsible for the profitability of the business.

9.5.      Individual Defendant Leonard was the co-owner and co-general manager of the corporate Defendant and operated it day-to-day with individual Defendant Meacham and had operational control over the corporate Defendant deciding all financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, as the individual Defendant had the power the hire and fire, daily managed the company and was ultimately responsible for the profitability of the business.

9.7.    Both individual Defendants would instruct Plaintiff Lenker to change the hours of Martinez and Barnette, and would also themselves change the hours of Martinez and Barnette, by reducing them from the actual hours that were worked, so that Martinez and Barnette were paid for less hours than they worked.  The Defendants processed payroll themselves and it was easy to cheat the employees out of their pay.

10.    Concerning Plaintiffs, the individual Defendants hired them, told them what to do day-to-day, determined how much and whether they would be paid (pay was sometimes late because the business had cash-flow issues), and Plaintiffs had to follow the individual Defendants' orders.

11.    The corporate Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too is the individual Defendant.

12.    The corporate Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.

12.5.    The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act.  During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13.    Plaintiffs were an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

14.    Plaintiffs were non-exempt employees of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Plaintiffs performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

4

## STATEMENT OF FACTS

15.     Within the past three (3) years (December 2017 to present), Plaintiffs worked for the Defendants performing various duties.  Lenker worked under the title "shop manager", which duties included performing manual labor fixing and modifying vehicles, and his compensation was to be a $1,250.00/wk for the 40 hours of work.[1]  Thus, Mr. Lenker's hourly rate is $1,250/wk ÷ 40 = $31.25/hr.

16.     Lenker's duties included doing whatever tasks the Defendants instructed him to perform, largely the manual labor repair work to fix and modify vehicles), and ordering parts and communicating with customers and other employees about same, and had to obtain the Defendants' approval as to how they wanted to handle the fixing and modifying of the vehicles.

16.5.    The duties of Martinez and Barnette were solely the working on vehicles to fix and/or modify them and whatever else the Defendants told them to do.

17.     Plaintiffs did not have the ability to hire or fire anyone (nor did he hire or fire anyone), and he did not regularly and customarily direct the work of any employees, much less two or more full-time workers—though Plaintiff Lenker was told by the Defendants to tell certain people they were fired.  Moreover, Lenker asked to hire certain people and Lenker asked that certain people not be fired, but the Defendants overrode Lenker's recommendations.

---

[1] When Mr. Lenker first began working for the Defendants, he was told that his schedule was 9:00 a.m. – 5:30 p.m. with a half-hour for lunch 5 days a week (typical 40 hour/week schedule).  The pay for these hours worked was $1,250/wk.  Thus, Mr. Lenker's hourly rate is $1,250/wk ÷ 40 = $31.25/hr. However, shortly after Mr. Lenker began working for the Defendants, the Defendants assigned him to work 9:00 a.m. – 8:30 p.m., and he worked through lunch and he worked on average 1 Saturday per month for 4 hours, so his actual hours worked were on average 58.5 hours. These were Mr. Lenker's hours from about his start date until approximately February or March 2019 when the company was sold.  Mr. Lenker is not seeking overtime compensation or anything else for the time period after the company was sold.  Martinez and Barnette were paid hourly. Martinez worked for the Defendants for approximately 8 months and Plaintiff Barnette for between 1-2 years.

18.     Plaintiffs were only given tasks that were designed to facilitate production work of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and routine work that did not involve them exercising independent judgment and discretion on matters of significance.

19.     Plaintiffs' primary duties were not management.

20.     During Plaintiffs' employment, Plaintiffs did not have any authority to interview, select, and/or train employees.  Plaintiffs did not have any authority to set and adjust the rates of pay and hours of work for any employees.  Plaintiffs had no authority to direct the work of employees.  Plaintiffs did not maintain production or sales records at all when they worked for the Defendant, nor did they use any such records to supervise or control any employee.  In fact, Plaintiffs know little about the business's financing or financial success or failure.  The finances were not Plaintiffs' responsibility.  Plaintiffs did not supervise any staff.  Plaintiffs had absolutely no say concerning any of the costs.  For example, concerning wages paid to employees, Plaintiffs had no say concerning what any particular employee would be paid, how many employees could work in the buildings, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants—Lenker complained about having to reduce the hours of Martinez and Barnette, but the Defendants required it, with Defendant Meacham stating that his father Robert Meacham said it was perfectly legal to reduce hours in the manner in which Defendants were reducing them, even though it was wage theft.  Plaintiffs had no authority to spend any of the Defendants' money at all, and had no authority to authorize the payment of bills.  Plaintiffs never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

21.     While Plaintiffs worked for the Defendants, they never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in

status.  While Plaintiffs worked for the Defendants, they never handled employee complaints and

grievances, as that was for the Defendants to do.  Also, Plaintiffs never disciplined employees, nor

did they have the power or authority to do that.  Plaintiffs did not plan any work for any employee,

as there was no work to plan.  Plaintiffs never determined any techniques to be used by employees

to do their job.  Plaintiffs never apportioned work among any employees, as there were no

employees who reported to them to whom to apportion work.  Plaintiffs never determined the type

of materials, supplies, machinery, equipment, or tools to be used by any employees, as the

Defendants or the employees themselves decided all of that.   Plaintiffs had no involvement in

controlling the flow and distribution of materials or merchandise and supplies.  Plaintiffs had

nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Plaintiff

had no involvement with respect to budgeting.  Plaintiffs were not involved in reviewing any sort

of financial documents or statements of the buildings, and they did not review any such documents,

nor was Plaintiffs supposed to.  Plaintiffs had no involvement in monitoring or implementing legal

compliance measures.  There were no legal issues that Plaintiffs had anything to do with in terms

of deciding how they would be handled or dealt with while they worked for Defendants, nor did

they have anything to do with paperwork concerning new employees or hires.  Plaintiffs simply

followed the established techniques and procedures with respect to their duties, all of which were

repetitive, routine, and recurrent work.

22.     Plaintiffs did not do anything that could have resulted in financial losses for the

Defendants.  Plaintiffs did not perform work that was directly related to management or general

business operations of Defendants or their customers, because Plaintiffs did not perform work

directly related to assisting with the running or servicing of the business, but rather were engaging

in production work (manual labor fixing vehicles and other manual tasks, and work arising out of

that, communications with clients concerning the boat and payment).  Plaintiffs also did not

perform work directly related to the management or general business operations of the Defendants because Plaintiffs did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.  Rather, Plaintiffs were people looking to perform production work the Defendants rely on so heavily, assist with the production work of getting vehicles modified and/or repaired.

23.     In the course of employment with Defendant, Plaintiffs worked the number of hours required of them, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24.     Plaintiffs regularly worked in excess of forty (40) hours per workweek—58.5 hours per week on average for Lenker sand the other Plaintiffs worked similar hours.

25.     The Defendant has partial accurate records of hours worked, because it required Plaintiffs to punch an iphone linked to a website on a computer.  The Defendants were able to go on the website through the computer and change the hours that were clocked in.  Of course, the hours are not going to be accurate because their hours were reduced by Defendants and thus they were essentially working off of the clock.

26.     Plaintiffs have retained the undersigned legal counsel to prosecute this action in their behalf, and has agreed to pay them a reasonable fee for their services.

27.     Plaintiffs are entitled to their reasonable attorneys' fees for prosecuting this action, whether or not they are the prevailing party.

## <u>COUNT I – RECOVERY OF OVERTIME COMPENSATION</u>

28.     Plaintiffs re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 27 above as though fully set forth.

29.     Plaintiffs are entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30.     By reason of the intentional, willful, and unlawful acts of Defendants, Plaintiffs have suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31.     As a result of the Defendants' willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Plaintiffs are entitled to liquidated damages as provided in § 216 of the FLSA, and is entitled to recover damages for three (3) years.

32.     The Defendants did not have the appropriate and required Department of Labor posters posted on the wall and thus were misled as to their rights to overtime and were also affirmatively misled, as the Defendants told Lenker that Robert Meacham told them what was happening with the hours was legal, and Martinez and Barnette did not know their hours were being reduced, because the Defendants did not tell them and did not allow Lenker to tell them.  Thus, Plaintiffs seek to have the statute of limitations equitably tolled, and to be able to go back to when they started.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, and to have the statute equitably tolled to August 2017 (which is when Lenker started, the other 2 Plaintiffs started after Lenker) Plaintiffs demand judgment against Defendants for the wages and overtime payments due them for the hours worked by them for which they have not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a

matter of right.

Dated: ___December 30, 2020_____

Respectfully submitted,

By: /s/ *Chris Kleppin*_____
      Chris Kleppin
      Fla. Bar No. 625485
      ckleppin@gkemploymentlaw.com
      The Kleppin Firm, P.A.
      8751 W. Broward Blvd.
      Suite 105
      Plantation, FL 33324
      Tel. (954) 424-1933
      Fax (954) 474-7405
Secondary E-Mails:   assistant@gkemploymentlaw.com